United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 04, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>**ANADRILL DIRECTIONAL SERVICES INC.,**<br><br>     Debtor. | §<br>§<br>§<br>§<br>§<br>§ | **CASE NO: 23-31199**<br><br>**CHAPTER 7** |
| **RONALD J SOMMERS, CHAPTER 7 TRUSTEE FOR ANADRILL DIRECTIONAL SERVICES INC.,**<br><br>     Plaintiff,<br><br>v.<br><br>**CAPYBARA CAPITAL, LLC,**<br><br>     Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Consolidated under Adv. Proc. No. 25-3036** |
| **SEAMLESS CAPITAL GROUP LLC,**<br><br>     Defendant. | §<br>§<br>§<br>§ | **Adv. Proc. No. 25-3042** |
| **SQUARE ADVANCE CORP. and SQUARE ADVANCE LLC,**<br><br>     Defendant. | §<br>§<br>§<br>§<br>§ | **Adv. Proc. No. 25-3043** |
| **UNION FUNDING SOURCE, INC.,**<br><br>     Defendant. | §<br>§<br>§<br>§ | **Adv. Proc. No. 25-3045** |
| **VIVIAN CAPITAL GROUP LLC,**<br><br>     Defendant. | §<br>§<br>§ | **Adv. Proc. No. 25-3046** |

## **MEMORANDUM OPINION**

Ronald J. Sommers, the chapter 7 Trustee, brought complaints against Capybara Capital, LLC, Seamless Capital Group, LLC, Square Advance, LLC, Union Funding Source, Inc., and Vivian Capital Group, LLC, and the cases were consolidated.[1] The Trustee brought the complaints to recover alleged fraudulent transfers, arguing that each defendant gave Anadrill Directional Services, Inc., a loan that carried a usurious interest rate.[2] The Trustee further argues that all the loans are void because the defendants did not give reasonably equivalent value to Anadrill Directional Services in exchange for Anadrill Directional Services' loan payments.[3] But Capybara brought a motion to dismiss arguing that the respective agreements were for sales of future receivables, not usurious loans.[4] The Trustee also brought a claim alleging that Vivian Capital Group violated the Racketeer Influenced and Corrupt Organizations Act.[5]

This Court finds that Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); and Count 3 – Recovery of Avoided Transfers under § 550(a)(1) survive the motion to dismiss because the Trustee has pled a plausible claim for relief as it relates to the fraudulent obligation, fraudulent transfer, and recovery of the transferred funds on each claim. But this Court grants the motion to dismiss Count 4 – Violations of RICO – 18 U.S.C. §§ 1962(a), 1964(c) because the Trustee failed to plead a plausible claim for relief under the Racketeer Influenced and Corrupt Organizations Act.

### A. Background

---

[1] ECF No. 24.
[2] ECF No. 34, at 4.
[3] ECF No. 34, at 4.
[4] ECF No. 29, at 3.
[5] ECF No. 34, at 27-30.

1. The debtor Anadrill Directional Services, Inc. ("*Anadrill*") is an oil and gas drilling service in Texas.[6]

2. On September 6, 2022, Anadrill entered an agreement (the "*Capybara Agreement*") with Capybara Capital, LLC ("*Capybara/Defendant*") in which Capybara agreed to pay Anadrill $288,000.[7] In exchange, Anadrill agreed to pay Capybara $423,000 in weekly installments of $13,218.75.[8] The Capybara Agreement provides that it is governed by New York law.[9]

3. According to the Trustee, the repayment of $423,000.00 through payments of $13,218.75 results in 32 payments.[10] Thirty-one weeks equals 217 calendar days, or approximately 0.59452 years.[11] A simple interest calculation yields an annual interest rate on the Agreement of approximately 78.84%.[12]

4. Beginning on September 14, 2022, Anadrill made seventeen payments to Capybara in the amount of $13,218.75 per week, for a total of $224,718.00.[13] Thus, Anadrill ultimately received $63,281.25 ($288,000 minus $224,718.75) more than it paid to Capybara.[14]

5. On October 26, 2022, Anadrill entered an agreement (the "*First Seamless Agreement*") with Seamless Capital ("*Seamless/Defendant*")[15] in which Seamless agreed to pay Anadrill $180,000. In exchange, Anadrill agreed to pay $299,800 to Seamless in installments.[16]

6. According to the Trustee, the repayment of $299,800.00 through payments of $21,414.29 results in 14 payments.[17] Fourteen weeks equals 98 calendar days, or approximately 0.26849 years. A simple interest calculation yields an annual interest rate on the First Seamless Agreement of approximately 247.89%.[18]

7. Beginning on October 28, 2022, Anadrill made forty-two payments of $1,250 and nine payments of $15,164.29 to Seamless, for a total of $188,978.61.[19]

8. On December 29, 2022, Anadrill entered a second agreement with Seamless (the "*Second Seamless Agreement*"), that purported to sell $515,656.00 of future receipts of the Debtor in exchange for a payment of $309,600.00 (the Debtor only received $197,493.61; it

---

[6] ECF No. 1, at 2.
[7] ECF No. 34, at 5.
[8] ECF No. 34, at 5.
[9] ECF No. 34, at 4.
[10] ECF No. 34, at 5.
[11] ECF No. 34, at 5.
[12] ECF No. 34, at 5.
[13] ECF No. 34, at 5.
[14] *See* ECF No. 34, at 6.
[15] ECF No. 34, at 6.
[16] ECF No. 34, at 6.
[17] ECF No. 34, at 6.
[18] ECF No. 34, at 6-7.
[19] ECF No. 29, at 5.

appears that $112,106.39 was used to satisfy the outstanding balance Anadrill owed on the First Seamless Agreement.[20]

9. Between December 30, 2022, and January 6, 2023, Anadrill paid Seamless one payment of $19,395 and five payments of $3,000, for a total of $34,395 on account of the Second Seamless Agreement.[21]

10. Thus, in total, Anadrill received $377,493.61 from Seamless and paid $223,373.61 to Seamless.[22] Therefore, Anadrill received $154,120 more than it paid to Seamless.[23] Both Seamless Agreements provide that they are governed by New York law.[24]

11. On September 28, 2022, Anadrill and Square Advance, LLC ("*Square/Defendant*") entered an agreement (the "*Square Agreement*"), in which Square transferred $235,000 to Anadrill.[25] In exchange, Anadrill agreed to pay Square $364,750 in installments of $15,197.91 per week.[26]

12. According to the Trustee, the repayment of $364,750.00 through payments of $15,197.91 results in 24 payments. Twenty-four weeks equals 168 calendar days, or approximately 0.46027 years.[27] A simple interest calculation yields an annual interest rate on the Agreement of approximately 119.96%.[28]

13. Beginning on October 4, 2022, and Anadrill made 14 payments to Square in the amount of $15,197.91 each week, for a total of $212,770.74 (the "*Square Transfers*").[29]

14. According to the Trustee, Anadrill received $22,229.26 ($235,000 minus $212,770.74) more than it remitted to Square on account of the Square Agreement.[30] The Square Agreement is governed by New York law.[31]

15. On July 27, 2022, Anadrill and Union Funding Source, Inc., ("*UFS/Defendant*") entered the Future Receivables Sale and Purchase Agreement (the "*UFS Agreement*") in which UFS agreed to transfer $335,705 to Anadrill.[32] In exchange, Anadrill agreed to pay UFS $486,500 in installments of $13,513.90 per week.[33]

---

[20] ECF No. 34, at 7.
[21] ECF No. 29, at 5.
[22] ECF No. 29, at 5.
[23] ECF No. 29, at 5.
[24] ECF No. 34, at 4.
[25] ECF No. 34, at 8.
[26] ECF No. 34, at 8.
[27] ECF No. 34, at 9.
[28] ECF No. 34, at 9.
[29] ECF No. 29, at 6.
[30] ECF No. 29, at 6.
[31] ECF No. 34, at 4.
[32] ECF No. 34, at 10.
[33] ECF No. 34, at 10.

16. Beginning on October 4, 2022, Anadrill made 23 payments to UFS in the amount of $13,513.90 each week, for a total of $310,819.70 (the "*UFS Transfers*").[34]

17. The repayment of $486,500.00 through payments of $13,513.90 results in 36 payments.[35] Thirty-six weeks equals 252 calendar days, or approximately 0.69041 years.[36] A simple interest calculation yields an annual interest rate on the Agreement of approximately 65.06%.[37]

18. According to the Trustee, Anadrill received $24,885.30 ($335,705 minus $310,819.70) more than it remitted to UFS on account of the UFS Agreement. The UFS Agreement provides that it is governed by Florida law.[38]

19. On December 9, 2022, Anadrill and Vivian Capital Group, LLC ("*VCG/Defendant*") entered an agreement (the "*VCG Agreement*") in which VCG agreed to transfer $225,000 to Anadrill.[39] In exchange, Anadrill agreed to pay VCG $374,750 in installments.[40]

20. According to the Trustee, the repayment of $374,750.00 through payments of $37,475.00 results in 10 payments. Ten weeks equals 70 calendar days, or approximately 0.19178 years. A simple interest calculation yields an annual interest rate on the Agreement of approximately 347.04%.[41]

21. Beginning on December 16, 2022, Anadrill then made 3 payments to VCG in the amount of $237,525, $20,000, and $17,475, for a total $275,000 (the "*VCG Transfers*").[42] The VCG Agreement is governed by New York law.[43]

22. In all cases except VCG, Anadrill has received more money from each Defendant (collectively, the "*Defendants*") than Anadrill has paid back to the Defendants.[44]

23. On April 3, 2023, Anadrill filed a voluntary petition under Chapter 7 of the Bankruptcy Code.[45]

24. On February 11, 2025, Ronald J. Sommers, the chapter 7 trustee (the "*Plaintiff*" or "*Trustee*") Trustee filed the "Plaintiff's Complaint To Avoid And Recover Fraudulent

---

[34] ECF No. 29, at 6.
[35] ECF No. 34, at 10.
[36] ECF No. 34, at 10.
[37] ECF No. 34, at 10.
[38] ECF No. 34, at 4.
[39] ECF No. 34, at 11.
[40] ECF No. 34, at 11.
[41] ECF No. 34, at 11.
[42] ECF No. 29, at 7.
[43] ECF No. 34, at 4.
[44] ECF No. 29, at 3.
[45] Bankr. ECF No. 1. "Bankr. ECF" refers to docket entries made in the Debtor's bankruptcy case, No. 23-31199. Entries made in Plaintiff's Case number 25-03036 shall take the format of ECF No.__.

Transfers Pursuant To 11 U.S.C. § 548" (the "*Complaint*"), commencing this adversary proceeding.[46]

25. On February 18, 2025, service of the Summons and Complaint was executed on Capybara.[47]

26. On March 18, 2025, the Trustee filed the "Motion For Entry Of Default And Affidavit In Support Thereof."[48]

27. On March 19, 2025, the Trustee filed a motion for "Entry Of Default."[49]

28. On May 6, 2025, the Court entered a "Stipulation And Agreed Order Setting Aside Default," thereby withdrawing the prior motions for default.[50]

29. On May 16, 2025, the Court entered a "Stipulation And Agreed Order for Consolidation Of Adversary Proceeding," consolidating the Capybara case, No. 25-3036, with related proceedings against Seamless, Square, USF, and VCG.[51] The Capybara case, No. 25-3036 is the lead adversary case.[52]

30. The cases that were consolidated with Case No. 25-3036 – Capybara Capital, LLC, were Case No. 25-03042 – Seamless Capital Group, LLC; Case No. 25-03043 – Square Advance Corp.; Case No. 25-03045 – Union Funding Source, Inc.; and Case No. 25-03046 – Vivian Capital Group, LLC.

31. On May 26, 2025, Defendants filed the "Defendants' Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(1) And 12(b)(6)."[53]

32. On May 28, 2025, the Court entered a "Comprehensive Scheduling, Pre-Trial & Trial Order" setting deadlines for discovery and trial.[54]

33. On June 16, 2025, the Trustee filed the "Response In Opposition To Defendants' Motion To Dismiss."[55]

34. On June 23, 2025, Defendants filed the "Reply In Support Of Defendants' Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(1) And 12(b)(6)."[56]

---

[46] ECF No. 1.
[47] ECF No. 5.
[48] ECF No. 6.
[49] ECF No. 9.
[50] ECF No. 21.
[51] ECF No. 24.
[52] ECF No. 24.
[53] ECF No. 29.
[54] ECF No. 31.
[55] ECF No. 34.
[56] ECF No. 35.

## I.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." An adversary proceeding falls within the Court's "related to" jurisdiction if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[57] The District Court for the Southern District of Texas has referred all such matters to the bankruptcy courts by standing order.[58]

Venue is proper pursuant to 28 U.S.C. § 1409(a), which provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Because Anadrill's underlying bankruptcy case is pending in this district, venue is proper.

This Court also determines that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(H), as it concerns the avoidance and recovery of allegedly fraudulent transfers. Even if this matter were deemed non-core, the Court finds that denying in part and granting in part a motion to dismiss is interlocutory in nature and therefore may be entered regardless of final adjudicatory authority.[59]

---

[57] *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).

[58] Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[59] *Strategy & Execution, Inc. v. Black Rifle Coffee Co.*, LLC, No. SA-23-CV-135-FB, 2025 WL 1914873, at *2 (W.D. Tex. Mar. 30, 2025) (finding that the granting of a partial motion to dismiss was interlocutory in nature); *see also Hines v. Alldredge*, 783 F.3d 197, 200 (5th Cir. 2015).

## II.    ANALYSIS

The Motion to Dismiss seeks dismissal of the claims asserted by the Trustee in the Complaint.[60] In the Complaint, the Trustee brings the following causes of action (collectively, the "*Counts*"), to wit: Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B) as to certain agreements; Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B) as to certain payments made under those agreements; and Count 3 – Recovery of Avoided Transfers under § 550(a)(1).[61] The Trustee brings Count 4 – Violation of RICO under 18 U.S.C. §§ 1962(a), 1964(c), against VCG only.[62]

### 1.  Standard of Review for Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("*Rule*"), a plaintiff's complaint must clear two hurdles. First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[63] "[A] formulaic recitation of the elements of a cause of action will not do."[64]  Specifics are unnecessary, but some facts must support each element.[65] Second, the complaint must state a claim "plausible on its face,"[66] meaning the plaintiff's right to relief must rise above a "speculative level."[67] Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[68] In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[69] "A claim has facial

---

[60] *See* ECF No. 1.
[61] *See generally* ECF No. 1.
[62] *See* ECF No. 29, at 3.
[63] *See* Fed. R. Civ. P. 8(a) (made applicable by Fed. R. Bankr. P. 7008).
[64] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[65] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[66] *Twombly*, 550 U.S. at 570.
[67] *Id.* at 555.
[68] Fed. R. Civ. P. 8(a).
[69] 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[70] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[71]

Motions to dismiss are disfavored and thus, rarely granted.[72] When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[73] This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[74] When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[75] The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[76] And although this Court "will not strain to find inferences favorable to the plaintiff[],"[77] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[78] To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.[79] Although claims sounding in fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), that

---

[70] *Id.* at 678.

[71] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[72] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[73] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[74] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[75] *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).

[76] *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).

[77] *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[78] *See Harris v. Fid. Nat'l Info. Serv.* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *Walker v. S. Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).

[79] *See id.*

rule does not apply to constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B), because such claims do not require intent to defraud.[80] Courts in the Fifth Circuit routinely apply the general pleading standard of Rule 8(a) to constructive fraudulent transfer claims.[81]

## 2. Motion to Dismiss for Lack of Constitutional Standing

As a threshold matter, the Court must decide whether the Trustee has constitutional standing to bring actions to avoid fraudulent obligations, avoid fraudulent transfers, and recover the proceeds of avoidance actions. To have standing in bankruptcy court, a plaintiff must satisfy Article III constitutional standing requirements.[82] Because federal courts are courts of limited jurisdiction, a case must be dismissed under Rule 12(b)(1) when the court lacks the constitutional or statutory authority to adjudicate it.[83] Rule 12(b)(1), made applicable to adversary proceedings through Federal Rule of Bankruptcy Procedure 7012, allows dismissal of a claim for lack of subject-matter jurisdiction.[84] The party asserting jurisdiction bears the burden of proving by a preponderance of the evidence that subject-matter jurisdiction exists.[85]

Furthermore, "[a] motion to dismiss for lack of subject matter jurisdiction may be brought for failure to allege injury sufficient for Article III standing at any time."[86] But a motion to dismiss under Rule 12(b)(1) should only be granted if it appears certain that the plaintiff cannot prove any set of facts entitling them to relief.[87]

---

[80] *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 118–19 (5th Cir. 2019) ("Constructive fraudulent transfer claims do not require allegations of intent to defraud and are therefore not subject to Rule 9(b).").

[81] *Rodriguez v. Cyr (In re Cyr)*, 602 B.R. 315, 324–25 (Bankr. W.D. Tex. 2019); *Think3 Litig. Tr. v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 182 (Bankr. W.D. Tex. 2015) (holding that Rule 8 governs constructive fraudulent transfer claims in the Fifth Circuit).

[82] *In re O'Gorman*, 115 F.4th 1047, 1054 (9th Cir. 2024) (citing *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012); *see also In re Wood Treaters*, LLC, 491 B.R. 591, 597 (Bankr. M.D. Fla. 2013).

[83] *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[84] Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012.

[85] *Ramming*, 281 F.3d at 161.

[86] Fed. R. Civ. P. 12(H)(3); *see also HSBC Bank USA, NA v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018) ("Standing is a component of subject matter jurisdiction").

[87] *Ramming*, 281 F.3d at 161.

Pursuant to Article III of the United States Constitution, a federal court's jurisdiction over a case depends on the existence of a "case or controversy."[88] A "case or controversy" exists only if the plaintiff has constitutional standing to bring the claim.[89] To have constitutional standing, the plaintiff must, as the United States Supreme Court described in *Spokeo, Inc. v. Robins*, "clearly allege facts demonstrating" that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[90] But if the plaintiff has failed to plead sufficient facts to establish each element, dismissal is appropriate.[91]

Furthermore, to demonstrate constitutional standing to bring an avoidance action, the plaintiff must "prov[e] the estate suffered an injury as a result of the transfers."[92] One way to establish an injury to the estate is to show that transfers to the defendant depleted estate assets.[93]

Here, Capybara, Seamless, Square, and UFS (the "*Respondents*") claim the Trustee lacks constitutional standing to bring avoidance actions. Respondents claim that Anadrill actually profited from the Agreements because Anadrill received more money from Respondents than Anadrill paid back to Respondents.[94] Thus, Respondents argue that Anadrill has no injury, and therefore the Trustee does not have constitutional standing to bring an avoidance action.[95] Notably, Respondents do not argue the Trustee lacks constitutional standing to bring a fraudulent transfer

---

[88] U.S. Const. art. III, § 2, cl. 1.

[89] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[90] *Id.*

[91] *Id.*

[92] *In re Wood Treaters, LLC*, 491 B.R. 591, 597 (Bankr. M.D. Fla. 2013) ("[T]he Trustee must satisfy the constitutional requirement of standing by establishing that the estate suffered an injury as a result of the transfers."); *In re Fontainebleau L.V. Cont. Litig.*, 716 F. Supp. 2d 1237, 1247 (S.D. Fla. 2010) ("Standing is a threshold jurisdictional question that must be addressed prior to and independent of the merits of a party's claim.").

[93] *In re O'Gorman*, 115 10 F.4th at 1054; *In re Wood Treaters, LLC*, 491 B.R. at 597 ("[T]he injury to the estate must be established as to each transfer alleged in the Complaint.").

[94] ECF No. 29, at 3.

[95] ECF No. 29, at 3.

claim against VCG, because VCG ultimately received more money from Anadrill than VCG paid to Anadrill.[96]

But the Trustee argues that Anadrill was injured because the Agreements are usurious, and the Trustee is "seeking to avoid the incurrence of each Defendant's respective agreement under 11 U.S.C. § 548(a)(1)(B)."[97] Applying the constitutional standing factors that the United States Supreme Court enunciated in *Spokeo, Inc. v. Robins*: (1) the Trustee's Counts are based on a plausible concrete and particularized injury because the Agreements provide that Anadrill must pay an allegedly fraudulent interest rate; (2) Anadrill's injury is plausibly traceable to the challenged conduct because Respondents formed the Agreements with Anadrill, and according to the Agreements Anadrill must pay an allegedly fraudulent interest rate; and (3) Anadrill's injury can plausibly be redressed if the Court determines that the loans are usurious and the Agreements are void.[98] Thus, if the Agreements are for usurious loans, it is plausible that the obligations created and the transfers made pursuant to the Agreements are not for fair value and are harmful to the estate. Therefore, construing the allegations in the Trustee's favor, the Trustee has plausibly pled that this Court has subject matter jurisdiction over this case.

### 3. Choice of Law

As another threshold matter, the Court must determine whether the choice of law clauses contained in each Agreement apply.[99] Bankruptcy courts faced with a choice of law issue must

---

[96] *See generally* ECF No. 29.
[97] ECF No. 35, at 4, n.4.
[98] *See In re Shoot the Moon, LLC*, 635 B.R. 797, 810 (Bankr. D. Mont. 2021).
[99] *In re Cyrus II P'ship*, 413 B.R. 609, 613 (Bankr. S.D. Tex. 2008).

decide whether to apply federal or state law.[100] The question depends on whether state law or federal bankruptcy law was invoked by the cause of action.[101]

Here, the Trustee brings usury claims which arise from state law.[102] Furthermore, the Trustee alleges that all the Agreements are governed by New York law, except for the UFS Agreement which states that Florida law applies.[103] None of the Defendants appear to dispute that New York law applies to all Agreements except the UFS agreement, to which Florida law applies.[104] Therefore, the Court does not need to engage in further choice of law analysis at this stage.[105] Thus, for purposes of the Motion to Dismiss, the Court will construe the allegations in the Trustee's favor and will apply New York law to each of the Trustee's Counts except for the Trustee's UFS Count, to which this Court will apply Florida law.

### 4.   Whether the Agreements Are for Loans or Sales of Future Receivables

As another threshold matter, the Court must decide whether the Trustee plausibly alleged that the Agreements are loans or sales of future receivables, because all of the Trustee's Counts depend on whether the Agreements are loans or sales of future receivables.[106] Under New York law, courts look to the substance, not merely the form, of an agreement to determine whether it constitutes a loan subject to usury laws.[107] Agreements styled as "merchant cash advances" or "receivables purchases" may actually be loans if they impose an absolute obligation to repay and

---

[100] *In re iHeartMedia, Inc.*, 597 B.R. 339, 350 (Bankr. S.D. Tex. 2019).
[101] *Id.*; *see also Crist v. Crist (In re Crist)*, 632 F.2d 1226, 1229 (5th Cir. 1980) ("But the Fifth Circuit has held, "[w]here disposition of a federal question requires reference to state law, federal courts are not bound by a forum state's choice of law rules, but are free to apply the law considered relevant to the pending controversy.").
[102] *See generally* ECF No. 1.
[103] ECF No. 34, at 4.
[104] *See generally* ECF No. 29, 35.
[105] *See In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287, 2022 WL 1589190, at *16 (Bankr. S.D. Tex. May 19, 2022).
[106] *See generally* ECF No. 1.
[107] *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 334 (2021).

shift virtually all risk to the borrower, or "seller" of the future receivables.[108] This is because in a true sale of future receivables, the lender, or "buyer," bears the risk that the purchased asset will be uncollectible.[109]

When determining whether the right to repayment is absolute, New York courts weigh three factors: "(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."[110] In addition, courts may consider whether there are default provisions entitling the lender to immediate repayment, and whether the agreement allows collection on a personal guaranty in the event of default or bankruptcy.[111]

Here, when looking at the substance of each Agreement, there are several aspects that indicate they are loans. Defendants do not appear to be bearing the risk of their respective Agreements because Defendants retained the ability to sweep 100% of Anadrill's income via ACH.[112] This shows that Defendants have control over the funds and are effectively requiring full repayment regardless of business performance. Defendants also each took a security interest in all of Anadrill's assets, further mitigating their risk.[113] Additionally, all the Agreements stipulate that the owner of Anadrill, Patrick McKinley, agreed to personally guarantee the debt.[114] Therefore, Defendants have methods to recover even if Anadrill defaults, which shows that Defendants, who

---

[108] *AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 77 (E.D.N.Y. 2022) ("A loan entails an absolute contractual entitlement for repayment and allocates risk to the borrower; conversely, a sale affords only a conditional right for performance and allocates risk to the buyer.").

[109] *Id.*; *see e.g.*, *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 414 (5th Cir. 2003); *see also Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 U.S. App. LEXIS 14241, at *3 (2d Cir. 2023) ("(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.").

[110] *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664 (2d Dept. 2020).

[111] *Id.* at 666.

[112] ECF No. 1, at 5.

[113] ECF No. 1, at 3.

[114] ECF No. 1, at 4.

are the lenders, are not bearing the risk of the Agreements. These features are hallmarks of disguised loans rather than true sales of future receivables.[115]

    Defendants argue the Agreements are not loans because the right to repayment is not absolute.[116] Defendants point to the tripartite test used by New York courts, arguing that (1) the Agreements contain reconciliation provisions, and if an Agreement contains a reconciliation provision, this indicates the right to repayment is not absolute.[117] But the reconciliation provisions here do not allow for a change in the total amount Anadrill owes Defendants, just the amount Anadrill owes in any given week.[118] Defendants also argue that (2) the Agreements have no finite term, indicating that Anadrill's obligation to pay is not absolute.[119] But the total amount Anadrill owes in interest is easily calculated by adding up the payments Anadrill owed to Defendants, and deducting the amount Anadrill paid to Defendants, which indicates there is an absolute obligation to pay.[120] Furthermore, Defendants argue that (3) the Agreements contain no provision declaring that bankruptcy would be considered a default, indicating that Defendants' right to repayment is not absolute.[121] This factor is not dispositive, however, as Defendants still have other ways to recover from Anadrill.[122] Defendants further argue the VCG Agreement specifically states that "it is a sale of future receipts and not a loan."[123] But at the motion to dismiss stage, courts permit claims to proceed where the complaint plausibly alleges facts showing that in *substance* the

---

[115] *See LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 N.Y.S.3d 219, 2022 N.Y. Misc. LEXIS 4113, at *5 (Sup. Ct. N.Y. Cnty. Aug. 16, 2022) (finding MCA agreement to be a loan where repayment was not contingent on receivables and daily debits were required regardless of revenue).
[116] ECF No. 29, at 18.
[117] *See* ECF No. 29, at 18.
[118] *In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *25 (Bankr. E.D.N.C. May 16, 2025) (citing *AKF, Inc. v. Haven Transp. Bus. Sols., Inc.*, No. 1:22-cv-269 (MAD/CFH), 2024 WL 2941746, at *7 (N.D.N.Y. June 11, 2024)).
[119] *See* ECF No. 29, at 18.
[120] ECF No. 34, at 19; *see AKF*, 2024 WL 2941746, at *7.
[121] *See* ECF No. 29, at 18.
[122] *AKF*, 2024 WL 2941746, at *7.
[123] ECF No. 29, at 17.

agreement operated as a loan.[124] Thus, Defendants have not shown that the right to repayment is not absolute, and the Trustee has plausibly pled that the Agreement is a loan, not a sale.

Now that it has been determined that the Trustee has made a plausible case that all the Agreements are loans, the Court will next examine the four Counts.

## A. The Trustee's Claim Under § 548(a)(1)(B)

To state a claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), a trustee must plausibly allege that:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor that was made . . . within 2 years before the date of the filing of the petition, if . . . the debtor . . . made such transfer or incurred such obligation and . . . (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

In their Motion to Dismiss, Defendants challenge only the fourth element, whether Anadrill received reasonably equivalent value.[125] Accordingly, the Court's analysis under Rule 12(b)(6) will focus on that single, disputed element.

### 1. Count 1 – The Trustee's Claim to Avoid a Constructively Fraudulent Obligation

The Trustee alleges the Agreements were for usurious loans and thus the obligations cannot provide reasonably equivalent value.[126] Under both New York and Florida law, loans that charge an interest rate exceeding 25% per annum are criminally usurious and void *ab initio*.[127] A contract that is void has no legal effect and creates no enforceable rights or obligations.[128]

---

[124] *In re Martinez Quality Painting & Drywall, Inc.*, No. 22-30357, 2025 WL 828882, at *8 (Bankr. W.D.N.C. Mar. 14, 2025).
[125] ECF No. 29, at 10–15.
[126] *In re Martinez Quality Painting*, 2025 WL 828882, at *8.
[127] *See Adar Bays, LLC*, 37 N.Y.3d at 325-26; *Jersey Palm-Gross, Inc. v. Paper*, 639 So. 2d 664, 667 (Fla. Dist. Ct. App. 1994).
[128] *Adar Bays*, 37 N.Y.3d at 325-26.

But while Florida allows usury to be used as an affirmative claim,[129] New York General Obligations Law § 5-511 prohibits corporations from using criminal usury as a defense, and "New York courts have held that the general prohibition on corporations asserting (noncriminal) usury as a defense should also be read to prohibit corporations from bringing affirmative claims alleging criminal usury."[130]

Here, the Trustee argues that the interest rate of each Agreement exceeded 25% which is too high to be legal in New York, and thus the Agreements are void *ab initio* according to § 5-511.[131] Therefore, according to the Trustee, the Agreements do not provide reasonably equivalent value.[132] Defendants argue, however, that Anadrill received more money from Defendants than Anadrill paid to Defendants in return, with the exception of VCG.[133] The Trustee responds that regardless of the dollar amount Anadrill received, the *obligation* was fraudulent in that it did not provide reasonably equivalent value, due to the alleged usurious interest rate.[134]

Defendants also argue that while New York statute Gen. Obligations Law § 5-521(1) only expressly prohibits corporations from using usury as a defense, some New York courts have held that, by inference, corporations cannot use usury as an affirmative claim either.[135]

In response, the Trustee points to *In re Martinez Quality Painting & Drywall* to support the use of usury as an affirmative claim.[136] In *In re Martinez Quality Painting & Drywall*, the

---

[129] *Chakford v. Sturm*, 65 So. 2d 864, 866 (Fla. 1953); *see also* Fla. Stat. § 687.071; *Jersey Palm-Gross, Inc.*, 639 So. 2d at 667.

[130] *In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *32 (Bankr. E.D.N.C. May 16, 2025) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 242-43 (S.D.N.Y. 2022) (citing *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D. 2d 456, 457-58 (N.Y. App. Div. 1991))).

[131] ECF No. 1, at 6-7; *In re Martinez Quality Painting & Drywall, Inc.*, No. 22-30357, 2025 WL 828882, at *8 (Bankr. W.D.N.C. Mar. 14, 2025); *see also Adar Bays, LLC*, 37 N.Y.3d at 333 (2021).

[132] ECF No. 1, at 6-7.

[133] ECF No. 29, at 3.

[134] ECF No. 34, at 24-27.

[135] ECF No. 21, at 19; *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D.2d 456, 457 (1991).

[136] *Martinez Quality Painting*, 2025 WL 828882, at *8.

plaintiff argued that a loan was void *ab initio* and so the loan did not provide reasonably equivalent value, and the Western District of North Carolina Bankruptcy Court allowed the complaint to survive the motion to dismiss, finding that the claim was plausible.[137] Thus, the Trustee has stated a plausible claim for relief by arguing that because the loan was void it did not provide reasonably equivalent value.

The Trustee also makes an independent argument that Anadrill did not receive reasonably equivalent value.[138] The Trustee argues that according to the Agreements, Anadrill was supposed to receive far less than it was obligated to pay in total to each Defendant and so Anadrill could not have received reasonably equivalent value.[139] At the motion to dismiss stage, this Court must take the Trustee's alleged facts as true and construe inferences in the Trustee's favor. Thus, the Trustee has pled a plausible claim for relief as to Count 1.

## 2.   Count 2 - The Trustee's Claim to Avoid Constructively Fraudulent Transfers

The Trustee alleges the Agreement was a usurious loan and thus the obligation cannot provide reasonably equivalent value.[140] Under both New York and Florida law, loans that charge an interest rate exceeding 25% per annum are criminally usurious and void *ab initio*.[141] A contract that is void has no legal effect and creates no enforceable rights or obligations.[142]

But while Florida allows usury to be used as an affirmative claim,[143] New York General Obligations Law § 5-511 prohibits corporations from using criminal usury as a defense, and "New

---

[137] *Id.* ("[T]he Plaintiff may not use the Criminal Usury Statute to argue that the MCA Agreements or Transfers are void, but the Plaintiff may argue that there is a lack of reasonably equivalent value on another basis set forth in the Complaint, including under section 5-511 of the New York General Obligations Law.").

[138] ECF No. 34, at 25.

[139] ECF No. 34, at 25.

[140] *In re Martinez Quality Painting*, 2025 WL 828882, at *8.

[141] *See Adar Bays, LLC*, 37 N.Y.3d at 325-26; *Jersey Palm-Gross, Inc. v. Paper*, 639 So. 2d 664, 667 (Fla. Dist. Ct. App. 1994).

[142] *Adar Bays*, 37 N.Y.3d at 325-26.

[143] *Chakford v. Sturm*, 65 So. 2d 864, 866 (Fla. 1953); *see also* Fla. Stat. § 687.04; *Jersey Palm-Gross, Inc.*, 639 So.2d at 667.

York courts have held that the general prohibition on corporations asserting (noncriminal) usury as a defense should also be read to prohibit corporations from bringing affirmative claims alleging criminal usury."[144]

Here, the Trustee alleges that the transfers were fraudulent because each Agreement imposed an annualized interest rate that was more than double the criminal usury threshold under New York law.[145] The Trustee further alleges that the Agreements were not true sales of receivables but rather disguised loans with terms that ensured full repayment regardless of Anadrill's revenue.[146] Therefore, the Trustee argues, the transfers Anadrill made to Defendants were made pursuant to criminally usurious contracts and so there was no reasonably equivalent value bestowed on Anadrill.[147] Defendants argue, however, that with the exception of VCG, Defendants paid Anadrill more than Anadrill paid them in return, and so the transfers were not fraudulent.[148] But the Trustee responds that the transfers could not have provided "reasonably equivalent value" to Anadrill because the transfers were made pursuant to void obligations.[149] At the motion to dismiss stage, the allegations will be construed in the Trustee's favor, and so the Trustee has stated a plausible claim for relief.

Defendants also argue that while New York statute Gen. Obligations Law § 5-521(1) only expressly prohibits corporations from using usury as a defense, some New York courts have held

---

[144] *In re Williams Land Clearing, Grading, & Timber Logger, LLC*, Nos. 22-02094-5-PWM, 23-00024-5-PWM, 2025 Bankr. LEXIS 1201, at *32 (Bankr. E.D.N.C. May 16, 2025) (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 242-43 (S.D.N.Y. 2022) (citing *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D. 2d 456, 457-58 (N.Y. App. Div. 1991))).

[145] ECF No. 1, at 6; *see also* N.Y. Penal Law § 190.40 (criminal usury threshold is 25%).

[146] ECF No. 1, at 5-6 (alleging guaranteed repayments, daily debits, and risk-shifting structure).

[147] ECF No. 1, at 6.

[148] ECF No. 29, at 3.

[149] *See* N.Y. Gen. Oblig. Law § 5-511(1); *see also* Fl. Stat. § 687.071(7); 5 Collier on Bankruptcy P. 548.03 (16th 2025) ("[I]f the court avoids an obligation under section 548 or it is otherwise not binding on the debtor, transfers made by the debtor on account of that obligation are not made for reasonably equivalent value, and may be set aside as actually or constructively fraudulent if the other requirements for actual or constructive fraud are met.").

that, by inference, corporations cannot use usury as an affirmative claim either.[150] But here again the Trustee argues that transfers made pursuant to a void contract cannot provide reasonably equivalent value, and so, construing the allegations in the Trustee's favor, the Trustee has stated a plausible claim for relief as to Count 2.[151]

### 3.   Count 3 - Recovery of Avoided Transfers Under § 550(a)(1)

The Trustee argues that the transfers from Defendants should be recoverable because they were made pursuant to void loans.[152] 11 U.S.C. § 550(a)(1) provides for recovery of avoided transfers.

Here, the Trustee argues that Defendants were the initial transferees of avoidable transfers, and so the transfers should be recovered pursuant to 11 U.S.C. § 550(a)(1).[153] Defendants argue that Count 3 should be dismissed because the Trustee's claim relies on the Agreements being loans, and, according to Defendants, the Agreements are not for loans.[154] But as explained *supra*,[155] the Trustee has made a plausible claim that the Agreements are loans. Therefore, the Trustee has pled a plausible claim for relief as to Count 3.

### 4.   Count 4 – Violations of RICO – 18 U.S.C. §§ 1962(a), 1964(c)

The Trustee alleges that VCG violated the Racketeer Influenced and Corrupt Organizations Act (the "*RICO Act*") and therefore the Trustee is entitled to damages. The RICO Act, 18 U.S.C. § 1962(a), provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, … through collection of an unlawful debt in which such person has

---

[150] ECF No. 21, at 11; *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S. 2d 802, 804 (1991).
[151] *Martinez Quality Painting*, 2025 WL 828882, at *8 ("[T]he Plaintiff may not use the Criminal Usury Statute to argue that the MCA Agreements or Transfers are void, but the Plaintiff may argue that there is a lack of reasonably equivalent value on another basis set forth in the Complaint, including under section 5-511 of the New York General Obligations Law.").
[152] ECF No. 1, at 9.
[153] ECF No. 1, at 9.
[154] ECF No. 29, at 3.
[155] *See supra*, II.D.

participated as a principal … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The RICO Act has five elements that must be proven:

[1] that a debt existed, [2] that it was unenforceable under New York's usury laws, [3] that it was incurred in connection with the business of lending money at more than twice the legal rate, [4] that the defendant aided collection of the debt in some manner, and [5] that the defendant acted knowingly, willfully and unlawfully.[156]

Furthermore, when making a claim under 18 U.S.C. § 1962(a), "alleging an injury solely from the predicate racketeering acts themselves is not sufficient because § 1962(a) does not prohibit those acts."[157] Instead, "any injury must flow from the use or investment of racketeering income."[158] Therefore, the plaintiff must argue facts alleging that the money from the underlying fraud was reinvested in a way that harmed the plaintiff.[159]

Here, the Trustee argues that (1) a debt existed because according to the VCG Agreement, Anadrill owed VCG $374,750;[160] (2) the debt was unenforceable under New York usury laws because the interest rate was excessive, making the agreement void *ab initio*;[161] (3) the interest rate is more than twice the legal rate of 25% because the Trustee calculated the interest rate to be 347.04%;[162] (4) VCG aided collection of the unenforceable debt in that it drafted the payments for

---

[156] *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 246 (S.D.N.Y. 2022) (quoting *United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986)).

[157] *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002).

[158] *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 441 (5th Cir. 2000).

[159] *Nolen*, 293 F.3d at 929; *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010) ("Although the Fifth Circuit has not specifically ruled on this issue, courts within the circuit have generally rejected Section 1962(a) claims based upon allegations that the defendant merely reinvested the proceeds into its business for purposes of perpetuation or expansion. As one court has stated, 'it is not sufficient to merely show that a defendant invested or used the income derived from its pattern of racketeering activity to facilitate its own general operations and that the continuing operation of the enterprise injured the plaintiffs.'") (quoting *Turner v. Union Planters Bank of S. Miss.*, 974 F. Supp. 890, 894 (S.D. Miss. 1997)).

[160] ECF No. 34, at 11.

[161] ECF No. 34, at 27.

[162] ECF No. 34, at 11, 27.

the usurious loan via ACH from the Debtor's bank account;[163] and finally (5) VCG acted knowingly because VCG makes these allegedly usurious loans routinely and tries to conceal them by calling the agreements sales of "receivables," and VCG used the proceeds to invest in operations that tried to issue more usurious loans to other businesses.[164]

Furthermore, the Trustee argues that when a RICO claim is brought under 18 U.S.C. § 1962(a), the one who committed the fraudulent activity can be the sole defendant.[165] But the Trustee fails to allege any facts indicating that Anadrill was injured from VCG's reinvesting of the funds.[166] Thus, the Trustee has not pled a plausible claim for relief as to Count 4.[167]

Ultimately, this Court finds that Count 1 – Avoidance of Constructively Fraudulent Obligation under 11 U.S.C. § 548(a)(1)(B); Count 2 – Avoidance of Constructively Fraudulent Transfers under 11 U.S.C. § 548(a)(1)(B); and Count 3 – Recovery of Avoided Transfers under § 550(a)(1) survive the motion to dismiss because the Trustee has pled a plausible claim for relief as it relates to the fraudulent obligation, fraudulent transfer, and recovery of the transferred funds on each claim. But this Court grants the motion to dismiss Count 4 – Violations of RICO – 18 U.S.C. §§ 1962(a), 1964(c) because the Trustee failed to plead a plausible claim for relief under the Racketeer Influenced and Corrupt Organizations Act.

---

[163] ECF No. 34, at 12, 27-28.
[164] ECF No. 34, at 27-28.
[165] ECF No. 34, at 28-29.
[166] *See generally* ECF No. 34; *see also generally* ECF No. 1; *Nolen*, 293 F.3d at 929-30.
[167] *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 700 (S.D. Tex. 2010) ("Although the Fifth Circuit has not specifically ruled on this issue, courts within the circuit have generally rejected Section 1962(a) claims based upon allegations that the defendant merely reinvested the proceeds into its business for purposes of perpetuation or expansion. As one court has stated, 'it is not sufficient to merely show that a defendant invested or used the income derived from its pattern of racketeering activity to facilitate its own operations and that the continuing operation of the enterprise injured the Intervenors.'").

### III.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Wednesday, February 4, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**